UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MANUEL GONZALES, JR.,<br><br>　　　　　　　　Plaintiff,<br>　　v.<br><br>ALLSTATE INSURANCE,<br><br>　　　　　　　　Defendant. | CASE NO. C19-5569 BHS<br><br>ORDER GRANTING PARTIAL<br>MOTION TO DISMISS |

　　　　This matter comes before the Court on Defendant Allstate's ("Allstate") Second Partial Motion to Dismiss. Dkt. 17. Allstate argues that Plaintiff Manuel Gonzales Jr.'s ("Gonzales") (revised) insurance bad faith and Washington Consumer Protection Act claims are time-barred[1] as a matter of law. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein

　　　　The Court granted Allstate's prior Motion to Dismiss these claims but allowed Gonzales to amend his complaint to allege a plausible, not time-barred claim. Dkt. 13. Gonzales's

---

[1] Allstate has pragmatically withdrawn its alternative argument, Dkt. 24, that Gonzales cannot plausibly allege a cognizable injury in support of his CPA claim, after the Washington Supreme Court's recent decision in *Peoples v. United Services Automobile Association*, 452 P.3d 1218 (2019).

ORDER-1

Amended Complaint. [Dkt. 14 alleges that his bad faith (three-year limitations period) and CPA (four years) claims accrued in June 2016—some 18 months after Allstate first rejected his claim for underinsured (UIM) coverage and nine months after he sent Allstate a Washington Insurance Fair Conduct Act (IFCA) notice based on that denial, but less than three years before he sued. Specifically, Gonzales claims he discovered in June 2016 that Allstate had not sent to the doctor it had engaged to evaluate his injuries from this accident an Independent Medical Examination (IME) report generated in litigation arising from an earlier, unrelated accident. He claims Allstate's failure to provide the prior report (after he instructed Allstate to do so) is the unfair, unreasonable, and deceptive conduct at the core of his current bad faith and CPA claims.[2]

**I. BACKGROUND.**

Gonzales was involved in two automobile accidents in 2005. In each case, he sued the other driver. One of the defendant drivers was insured by Allstate. In defending its insured, Allstate engaged two doctors, Duff and Dietrich, to conduct an IME on Gonzales. The IME was conducted in November 2009, and Duff and Dietrich provided Allstate their report dated November 24, 2009. Dkt. 8-5.

On December 27, 2009, Gonzales was involved in another accident. He settled with the other driver's insurance for $25,000. In 2013, he claimed UIM benefits from his own insurer, Allstate, for the injuries suffered in the 2009 accident. Allstate engaged Dr. Wendt to review Gonzales's medical records and to prepare a report opining on the nature and extent of his injuries from the 2009 accident. Wendt did so in November 2014, and his report describes all the information and medical records he reviewed. *See* Dkt. 18-1. Wendt opined that the 2009

---

[2] A bad faith tort claim and a CPA statutory claim have different limitations periods but, as is often true, in this case they rely on the same factual allegations. The issue is whether Gonzales's claims accrued in January 2015 (more than four years before the suit), or in June 2016 (less than three). This Order refers to both as "bad faith" for clarity, and its analysis of the accrual date applies to both claims.

accident did not worsen Gonzales's pre-existing concussion, neck, back and headache symptoms, contrary to Gonzales's claim that the 2009 accident caused permanent, debilitating neck injuries. Allstate sent Wendt's report to Gonzales's attorney in December 2014.

On January 6, 2015, Allstate rejected Gonzales's $100,000 UIM settlement demand, based partly on Wendt's opinion about the cause and extent of his injuries. Instead, it offered $2500 to settle the claim. Dkt. 18-4. Gonzales's attorney responded a week later, providing evidence and argument that his own expert, Dr. Kelly, Gonzales's treating physician, disagreed with Wendt. He reiterated and explained his position that Gonzales's damages exceeded his $100,000 UIM policy limit. Dkt. 18-5.

Gonzales sent formal written notice accusing Allstate of violating the IFCA to the Washington Insurance Commissioner and to Allstate in October 2015. The parties apparently continued to discuss the case over the next several months, although not all those communications are described in Gonzales's complaints.[3] On June 7, 2016, Gonzales's counsel rejected Allstate's latest offer (not in the record). He also asked questions as follows:

> 1. Did Allstate provide Dr. Wendt with a copy of the examination results and conclusions of Allstate's experts, Drs. Duff and Dietrich, before Dr. Wendt gave his opinion?
> 2. Has Allstate provided Dr. Wendt with a copy of the examination results and conclusions of Allstate's experts, Drs. Duff and Dietrich, after Dr. Wendt gave his opinion?
> 3. Does Allstate have a factual basis to conclude that Drs. Duff and Dietrich's findings about JR's condition on November 5, 2009 were wrong?
> 4. If so, when did this information come into Allstate's possession, and what is that information?

---

[3] A court may consider documents attached to or incorporated by reference into a complaint, without converting a motion to dismiss into a motion for summary judgment. *See, e.g.*, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2013). Both parties have provided documents described in Gonzales's complaints and the Court has considered them.

ORDER - 3

Dkt. 8-6.[4]

Gonzales sued Allstate for breach of contract, bad faith, and violations of the CPA and the IFCA in May 2019, more than nine years after his accident and more than four years after Allstate first rejected his UIM demand. Dkt. 1-1. The gist of his bad faith and parallel CPA claims was that Allstate failed to provide the Duff & Dietrich report to Wendt, and that it unreasonably and unfairly "hid" or "ignored" that report. His Complaint asserted that Allstate's denial of his UIM claim based on Wendt's incomplete report was bad faith. Dkt. 1-1.

Allstate moved to dismiss Gonzales's extra-contractual claims, arguing that they were time-barred because they accrued no later than January 2015, when it denied Gonzales's demand. It argued then, as it does now, that Gonzales knew or should have known that the Duff & Dietrich Report was not part of the medical records Wendt reviewed in forming his opinion in December 2014, more than four years before he sued.

Gonzales argues that Allstate misapprehended his argument and emphasized that the bad faith occurred not when Allstate failed to provide the Duff & Dietrich report to Wendt in late 2014, but instead when it refused to provide that report to Wendt in June 2016, when (he claims) he discovered that Wendt had not yet seen it, and asked Allstate to provide it to him. He asked the Court to equitably toll the limitations period because Allstate "hid evidence" from its own medical expert, and then denied his claim based on an incomplete report. Dkt. 8.

The Court granted the motion, but permitted Gonzales to amend his complaint to include the allegations he made in response to Allstate's motion. It explained that it preferred to evaluate actual allegations rather than speculative ones raised for the first time in a responsive brief. It

---

[4] The Court will accept as true Gonzales's allegation that he asked Allstate to provide the Duff & Dietrich report to Wendt in June 2016. Amended Complaint, Dkt. 14 at ¶ 4.19. It notes, though, that the letter attached to his Response to Allstate's first Motion (quoted above) does not in fact include such a request. Dkt. 8-6.

also expressed skepticism about the plausibility of the argument that a bad faith claim could accrue months after the insured sent an IFCA notice alleging bad faith. Dkt. 13.

Gonzales's Amended Complaint deletes his reference to Allstate's January 2015 "wrongful denial" of his UIM claim and abandons his IFCA claim entirely. Dkt. 14. Gonzales now claims that the unfair or deceptive conduct supporting his bad faith and CPA claims is Allstate's "refusal" to provide the Duff & Dietrich report to Wendt after he asked them to, in June 2016.

Allstate renews its motion to dismiss, arguing that Gonzales's revised allegations are a transparent and futile attempt to save his time-barred extra-contractual claims. It argues that Gonzales's allegations and the evidence they reference demonstrate as a matter of law that he knew or should have known no later than January 6, 2015, when he received Allstate's denial, that Wendt did not review the prior IME report and that Allstate had denied his UIM demand based on Wendt's opinion. It argues that his extra-contractual claims remain facially time-barred.

## II. DISCUSSION.

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007);

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *Bell*).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988). A proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Gaskill v. Travelers Ins. Co.*, No. 11-cv-05847-RJB, 2012 WL 1605221, at *2 (W.D. Wash. May 8, 2012) (citing *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997)).

An insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith. *Truck Ins. Exch. v. Vanport Homes, Inc.,* 147 Wn. 2d 751, 765, 58 P.3d 276 (2002). In Washington, an insurer generally has an "enhanced duty" to put its insured's interests on "equal footing" with its own. *Am. States Ins. Co. v. Symes of Silverdale, Inc.*, 150 Wn. 2d 462, 470 (2003); *Tank v. State Farm Fire & Cas. Co.*, 105 Wn. 2d 381 (1986). But this enhanced duty does *not* apply in the UIM context, where the insurer stands in the

tortfeasor's shoes and thus is in an adversarial relationship with its own insured. *Ellwein v. Hartford Acc. & Indem. Co.*, 142 Wn. 2d 766, 780 (2001), *overruled in part on other grounds, Smith v. Safeco Ins. Co.*, 150 Wn. 2d 478 (2003); *see also Barry v. USAA*, 98 Wn. App. 199 (1999). Instead, to show bad faith in the UIM context, the insured must show the denial of benefits was "unreasonable, frivolous, or unfounded," as opposed to simply incorrect. *Kirk v. Mt. Airy Ins. Co.*, 134 Wn. 2d 558, 560 (1998); *see also Kim v. Allstate Ins. Co.*, 153 Wn. App. 339, 356 n.3 (2009) (applying *Kirk's* "unreasonable, frivolous, or unfounded" standard to a bad faith, UIM claim.)

Allstate again argues that any bad faith (or CPA) claim accrued no later than January 6 or 7 2015, when he received Allstate's denial of his UIM claim. It also argues that Wendt's December 2014 report plainly discloses that he did not receive, review or rely on the prior Duff & Dietrich report in forming his own opinions—he describes what he reviewed and that report is not on the list. It argues that any claim based on Allstate's failure to provide the earlier report to Wendt, and on its ensuing reliance on Wendt's opinion to deny Gonzales's claim, accrued when Allstate actually did just that: January 2015.

A claim accrues, and the limitations period begins to run, when a party has the right to apply to a court for relief. *Haslund v. City of Seattle*, 86 Wn. 2d 607 (1976). The limitations period begins when the plaintiff knows or should have known of the relevant facts, whether or not he realizes that those facts amount to a legal cause of action; a claim's accrual is triggered by knowledge of its factual, not its legal, basis. *See Allen v. State*, 118 Wn. 2d 753 (1990); *see also Stedman v. Progressive Direct Ins.*, No. C18-1254 RSL, 2019 WL 1013456 (W.D. Wash Mar. 4, 2019). Furthermore, and more specifically, a claim for wrongful denial of insurance benefits accrues when the claim is first denied. *Lenk v. Life Ins. Co. of N. Am.,* No. C10-5018 LRS, 2010

WL 5173207 (E.D. Wash. Dec. 13, 2010) (bad faith claim accrued on first, not final, denial of insurance benefits); *Haley v. Allstate Ins. Co*., No. C09 C09-1494 RSM, 2010 WL 4052935 (W.D. Wash. Oct. 13, 2010) (plaintiff insured's bad faith claim based on insurer's failure to include medical record in its valuation of insurance claim accrued when insurer offered less than plaintiff sought). Any other rule would make no sense: a plaintiff could revive a stale claim (or at least continue to re-start the limitations period) by making a new demand or providing what he claimed was important new evidence.

Gonzales now argues that Allstate did not "deny" his claim, in January 2015 or at any other time; negotiations continued, he claims, until recently. He now claims that *he* did not provide the Duff & Dietrich report to Allstate's adjuster until June 2016. Dkt. 22 at 1, 2, 3, and 4. He argues that Allstate has "failed to establish" that it had an independent duty to "scour its files for evidence that supports a claim for UIM benefits" and to unilaterally provide the Duff & Dietrich report to Wendt when it engaged him. Instead, he claims, that duty arose only when he asked Allstate to provide the report, and it was breached only when Allstate refused to do so. Thus, he claims, his bad faith claim did not accrue until those things occurred, in June 2016.

As Allstate points out, this newly-minted version of Gonzales's bad faith claim cannot be squared with Gonzales's actual bad faith allegations, or with the timeline demonstrated by the documents he references. Gonzales's initial Complaint affirmatively alleged that "Allstate had in Allstate's possession the Duff and Dietrich Report before hiring Dr. Wendt" and that "Allstate chose not to give the Duff and Dietrich report to Dr. Wendt." Dkt. 1-1 at ¶¶ 4.10 and 4.11. These allegations are repeated in his amended complaint. Dkt. 14 at ¶¶ 4.11 and 4.12. Indeed, Gonzales still alleges that he did not "discover" until June 2016 Allstate's "decision" to

"intentionally fail" to provide the earlier report to Wendt—implicitly acknowledging that any malfeasance had already occurred. Dkt. 14 at ¶¶ 7.2, 8.8 and 8.13.

The plausibility of these allegations, not the arguments in Gonzales's briefing, are the subject of the motion to dismiss. Gonzales's allegations and the evidence he references directly contradict his current claim that he did not give the Duff & Dietrich report to Allstate until June 2016. They are irreconcilable with his repeated argument that Allstate had no obligation to provide that report to Wendt until he asked Allstate to do so. Allstate could not have deliberately withheld evidence from Wendt, and then relied on Wendt's incomplete opinion to deny Gonzales's UIM policy limits demand, in June 2016. It had already done all those things, in writing, a year and a half earlier. Dkt. 8-6.

Gonzales knew or should have known all the facts that he contends support a bad faith claim when he had in hand Wendt's report and Allstate's written rejection of his policy limits demand, in January 2015—more than four years before he sued. He could have sued based on that January 2015 letter, when he received it. Gonzales's bad faith and related CPA claims are time-barred.

### III. ORDER

Therefore, it is hereby **ORDERED** that Allstate's Second Partial Motion to Dismiss, Dkt. 17, is **GRANTED**.

Dated this 28th day of January, 2020.

BENJAMIN H. SETTLE
United States District Judge

ORDER-10